UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX LAMOTA MARTI, | No. 2:21-cv-01829 SCR P |
| Plaintiff, | |
| v. | ORDER AND PROTECTIVE ORDER |
| TODD MANNING, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se in this civil rights action under 42 U.S.C. § 1983. On November 13, 2024, the undersigned granted in part and denied in part plaintiff's motion to compel (ECF No. 37) and ordered defendants to submit responsive grievances and appeals to the court for in camera review (ECF No. 89). Having completed the review, the undersigned rules that defendants may withhold the following seven grievances on third-party privacy grounds: (1) 231290; (2) 233850; (3) 239923; (4) 241813; (5) 242824; (6) 244601; and (7) 248112. However, defendants must produce the following fifteen grievances/appeals consistent with the instructions and Protective Order below: (1) 19-00713; (2) 18-04568; (3) 139696; (4) 19-04688; (5) 246627; (6) 262149; (7) 18-02819; (8) 18-05051; (9) 18-05095; (10) 13-1824; (11) 339799; (12) 17-01598; (13) 20039945; (14) 20045502; (15) 381973.

Also before the court are plaintiff's motion for reconsideration (ECF No. 91), plaintiff's motion to modify the discovery and scheduling order (ECF No. 94), and plaintiff's motion to hold

defendants in contempt (ECF No. 95). For the reasons described below, plaintiff's motion for reconsideration is granted, plaintiff's motion to modify the discovery and scheduling order is granted, and plaintiff's motion to hold defendants in contempt is denied. Finally, the court orders defendants to arrange for plaintiff's in-person review of videos responsive to RFP Set 1, number 8, consistent with the instructions below.

**PLAINTIFF'S MOTION TO COMPEL**

**I.    Background**

Plaintiff is proceeding under 42 U.S.C. § 1983 on First Amendment retaliation and Eighth Amendment deprivation of outdoor exercise claims against defendants. (See Screening Order, ECF No. 6.) Plaintiff served RFPs on defendants on September 23, 2023, and on October 12, 2023, which he named Set 1 and Set 2. (ECF No. 37 at 2.) Plaintiff filed a motion to compel further production under Set 1, numbers 1-7, 9, 10-12, 14, 16, and Set 2, numbers 1 and 2. (ECF No. 37.) Plaintiff argued that defendants' responses were inadequate and evasive, and that defendants improperly asserted the official information privilege ("OIP") for many of the requests. (Id. at 12.) Defendants opposed the motion, arguing that they "either produced the documents at issue" or "appropriately objected and withheld documents." (ECF No. 43 at 1.)

As relevant here, defendants produced a privilege log and declaration from Mule Creek State Prison (MCSP) Litigation Coordinator Santos in support of their OIP claims. (Id. at 11-13; ECF No. 43-1.) Santos stated, in sum, that the contested documents contain confidential information that, if disclosed, "could endanger the safety of staff and inmates, reveal internal and confidential investigative techniques and processes, and potentially jeopardize the security of the institution." (ECF No. 37-1 at 55.)

In its order on plaintiff's motion to compel, the court found that Santos' declaration met the "substantial threshold showing" required to invoke the OIP. (ECF No. 89 at 8 (citing Kelly v. City of San Jose, 114 F.R.D. 653, 669 (N.D. Cal. 1987)).) Under the OIP analysis, the burden then shifted to plaintiff to justify in camera review. (Id.) The undersigned determined that plaintiff had justified in camera review of documents responsive to four specific RFPs covering MCSP inmate grievances and appeals filed against defendants in the last ten years:

(1) RFP No. 1 of Set 1 (inmate grievances);

(2) RFP No. 2 of Set 1 (inmate grievances processed as staff misconduct complaints);

(3) RFP No. 1 of Set 2 (inmate grievances related to appeals); and

(4) RFP No. 2 of Set 2 (inmate grievances processed as staff misconduct complaints related to appeals).

(Id. at 8-10.) Defendants were ordered to electronically submit the responsive documents to the court for determinations of: (1) "whether a carefully crafted protective order could protect the security interests discussed in the Santos declaration"; and (2) whether disclosure would "violate the privacy interests of third parties." (Id. at 10.) The court would then "issue a final order regarding plaintiff's access to these documents." (Id.) Plaintiff's motion to compel was denied as to the remaining RFPs under Sets 1 and 2 on relevancy grounds. (See id. at 11-17.)

**II.    Analysis**

   **A. Third-Party Privacy**

Defendants submitted twenty-two (22) separate grievance investigation files responsive to RFP Set 1, numbers 1 and 2, and RFP Set 2, numbers 1 and 2.[1] Before addressing the specific security interests raised in the Santos declaration, the court considers defendants' more general third-party privacy objections. (See ECF No. 43 at 12; ECF No. 89 at 10.) The Ninth Circuit recognizes a constitutionally protected privacy interest in avoiding disclosure of private personal matters, including medical records. See Norman-Bloodsaw v. Lawrence Berkeley Lab., 135 F.3d 1260, 1269 (9th Cir. 1998). "The right of privacy is not an absolute bar to discovery and courts must balance the need for the information against the claimed privacy right." Harris v. Kyle, No. 1:19-cv-0462-DAD-EPG-PC, 2021 WL 195477, at *2 (E.D. Cal. Jan. 20, 2021) (citing Allen v. Woodford, No. CV-F-05-1104-OWW-LJO, 2007 WL 309485, at *5 (E.D. Cal. Jan. 30, 2007)); see also Soto v. City of Concord, 162 F.R.D. 603, 616 (N.D. Cal. 1995) ("Resolution of the privacy objection requires a balancing of the need for the information sought against the privacy right asserted.").

---

[1] Plaintiff references 24 responsive documents. (See ECF No. 37 at 13). However, the privilege log lists grievance numbers 231290 and 246627 twice. (See ECF No. 37-1 at 58.)

3

After in camera review, the undersigned finds that third-party privacy interests outweigh disclosure of the following seven (7) grievances, all involving the same complainant-inmate and general allegations: (1) 231290; (2) 233850; (3) 239923; (4) 241813; (5) 242824; (6) 244601; and (7) 248112. The complainant's medical history and mental health treatment records are so intertwined with the investigations that it is not feasible to protect complainant's privacy rights through redaction or other protective measures. See Harris, 2021 WL 195477, at *2 (E.D. Cal. Jan. 20, 2021) (prohibiting disclosure of emails containing confidential medical and mental health information after in camera review). The documents are also of comparatively no relevance to plaintiff's retaliation claims. While the privilege log shows all seven grievances concern defendant Pasioles (see ECF No. 37-1 at 58), Pasioles was just one of twenty-five MCSP staff named in each grievance and was not involved in the underlying events. Thus, because the grievances are not relevant to plaintiff's retaliation claims and disclosure would reveal complainant's sensitive medical and mental health records, defendants may withhold the files.

### B. Official Information Privilege

The court next applies defendants' claim of OIP to the remaining fifteen (15) files. "Federal common law recognizes a qualified privilege for official information." Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033-34 (9th Cir. 1990) (citations omitted). Government personnel files and internal investigatory documents are considered official information. See Sanchez, 936 F.2d at 1033-34; Miller v. Pancucci, 141 F.R.D. 292, 301 (C.D. Cal. 1992). The official information privilege is subject to the competing interests of the requesting party and is "subject to disclosure especially where protective measures are taken." Noble v. City of Fresno, No. 1:16-cv-1690-DAD-BAM, 2017 WL 5665850, at *4 (E.D. Cal. Nov. 27, 2017) (quoting Kerr v. United States District Court, Northern District of California, 511 F.2d 192, 198 (9th Cir. 1975)). In the context of civil rights action, "this balancing approach is moderately 'pre-weight[ed] in favor of disclosure.'" Bryant v. Armstrong, 285 F.R.D. 596, 604 (S.D. Cal. 2012) (quoting Kelly, 114 F.R.D. at 661 (alteration in original).

As noted above, the Santos declaration provided the necessary foundation to trigger the court's OIP analysis. (ECF No. 89 at 8.) The government interests identified by Santos are

4

1  summarized as follows.  First, Santos states that the responsive documents contain confidential
2  information and investigatory tactics that must be kept confidential from inmates to protect the
3  safety and security of the staff.  (ECF No. 37-1 at 2.)  Second, Santos asserts that maintaining the
4  confidentiality of the investigation also protects the privacy of inmate informants.  "For example,
5  inmate witnesses might refuse to cooperate for fear that their statements may be revealed to other
6  inmates, which could put them in danger of being labeled a "snitch" and/or threaten their safety.
7  (Id. at 3.)

8  Finally, Santos laid out the potential safety and security risks of disclosing grievance
9  records to an inmate.  Fears that the inmate may misuse or disseminate private and confidential
10 information could "chill inmates from availing themselves of the administrative grievance
11 process."  (Id.)  On the other hand, because CDCR employees are "routinely subject to false
12 accusations of misconduct," the information could be in "high demand" to assist in drafting
13 "more detailed [false] accusations."  (Id.)  Santos states that a protective order is an "inadequate
14 shield" from these safety and security risks because other inmates not subject to it could obtain
15 the confidential documents and disseminate them through the prison.  (Id. at 4.)

16 The security risks presented by Santos are well taken.  However, the undersigned does not
17 find the specific documents at issue here to be tactical in nature.  The production primarily
18 consists of investigation records (grievances, witness statements, interview notices, etc.) on
19 CDCR templates; it did not reveal any specific investigatory techniques or related CDCR or
20 MCSP policies.  This distinguishes the production from the one in Ibanez v. Miller, No. CIV S-
21 06-2668-JAM-EFB-P, 2009 WL 3481679 (E.D. Cal. Oct. 22, 2009), which defendants cite for
22 support.  (ECF No. 43 at 12.)  There, the court sustained the prison's objection to turning over an
23 operational procedure regarding tactical responses to disturbances and other prison alarms.  The
24 court determined after in camera review that the operational procedure contained "critical prison
25 security information that, if disclosed, could endanger prison staff and compromise tactical
26 responses to prison alarms."  (Id. at *3.)  Defendants therefore have failed to establish any tactical
27 risks that outweigh disclosure.  See Kahaku v. Wallace, No. 2:20-cv-1807-KJN-P, 2022 WL
28 ////

17555402, at *2 (E.D. Cal. Dec. 9, 2022) (ordering release of grievance documents over prison's objection that release "may disclose investigative techniques").

Next, while recognizing defendants' concerns for the safety and privacy of inmate informants, the court finds that redacting witness information is an adequate protective measure. Few of the fifteen investigation files involved witnesses; one involved an unnamed confidential informant, Appeal 18-02819, and only five others involved clearly identified inmate witnesses (e.g., 19-04688, 129372, 139696, 262149, and 20045502). Other judges have found redactions appropriate against similar invocations of the OIP. See, e.g., Wells v. Gonzales, No. 1:17-cv-1240-DAD-EPG-PC, 2019 WL 4054022, at *8 (E.D. Cal. Aug. 28, 2019) (holding defendants may redact names of complaining inmates and any other persons besides defendant from grievances to protect third-party privacy interests); Harris v. German, No. 1:15-cv-1462-DAD-GSA-PC, 2019 WL 4640503, at *8 (E.D. Cal. Sept. 24, 2019) (permitting defendants to redact identifying information of grievance witnesses).

Finally, the court believes that a robust protective order, in combination with the redaction of witness information, will adequately account for defendants' remaining privacy concerns. Defendants have identified a particularized risk in plaintiff's use of third-party information throughout his motion to compel, including referencing and even attaching the records of other inmates that he received in previous cases. (See ECF No. 43 at 13.) However, the redaction of witness and other third-party information largely accounts for such concerns. And the robust protective order entered below will prevent plaintiff from using the redacted documents for purposes beyond this litigation.

Accordingly, the undersigned finds that defendants must disclose, subject to the protective order entered as a part of this order:

| | | |
|---|---|---|
| 1.) 19-00713 (23 pages) | 6.) 262149 (49 pages) | 11.) 339799 (34 pages) |
| 2.) 18-04568 (49 pages) | 7.) 18-02819 (104 pages) | 12.) 17-01598 (21 pages) |
| 3.) 139696 (43 pages) | 8.) 18-05051 (11 pages) | 13.) 20039945 (42 pages) |
| 4.) 19-04688 (17 pages) | 9.) 18-05095 (11 pages) | 14.) 20045502 (45 pages) |
| 5.) 246627 (94 pages) | 10.) 13-1824 (66 pages) | 15.) 381973 (162 pages) |

These grievance files may be redacted as necessary to protect the privacy interests of inmates and other third-parties. Production shall occur within the next thirty days.

## PLAINTIFF'S MOTION FOR RECONSIDERATION

### I. Background

In the motion for reconsideration (ECF No. 91), plaintiff asks the court to reevaluate its order denying his motion to compel Rule Violation Reports ("RVRs") issued by defendant Pasioles (RFP Set 1, number 7) and defendant Manning (RFP Set 1, number 11) for "falsification of document" pursuant to Cal. Code Regs., tit. 15, § 3021. The undersigned ruled the requests were overbroad and burdensome because they were not limited to MCSP and plaintiff did not show why the RVRs were relevant to his First Amendment retaliation claim. (ECF No. 89 at 14.)

Plaintiff claims that prior to his motion compel, defendants reported no responsive RVRs to his request. (See ECF 37-1, Exh. E.) Defendants, however, later identified nine (9) responsive RVRs in the new privilege log attached to their opposition to plaintiff's motion to compel. (See ECF No. 43, Exh. A.) Plaintiff suggests that in denying his motion to compel, the court did not consider the arguments in his reply brief regarding the narrow scope of the RFPs and the relevancy of the newly discovered RVRs. (ECF No. 91 at 3.) Plaintiff asks the court to order in camera review of the nine RVRs and reconsider their relevancy. (Id. at 3.)

In their opposition to plaintiff's motion for reconsideration, defendants explain that they did not know they could search RVRs by individual staff member until conferring with plaintiff on his motion to compel. They subsequently performed the search and listed the nine responsive RVRs in the revised privilege log attached to their motion to compel opposition brief. (ECF No. 92 at 1-2.) Nevertheless, defendants argue that plaintiff's motion fails to raise new or different facts that warrant reconsideration and the RVRs are in fact irrelevant. (Id. at 3-4.)

On reply, plaintiff again argues that the nine RVRs are relevant to Pasiole's and Manning's alleged pattern of issuing RVRs as retaliation for filing grievances. (ECF No. 93.) Plaintiff asks for in camera review of the nine RVRs in conjunction with the court's in camera review of the retaliation grievance and appeal documents to "allow the parties to have a more comprehensive assessment of the relevance of the evidence in this case." (Id. at 4.)

## II.   Analysis

The court has discretion to reconsider and vacate a prior order. Barber v. Hawaii, 42 F.3d 1185, 1198 (9th Cir. 1994); United States v. Nutri-cology, Inc., 982 F.2d 394, 396 (9th Cir. 1992). Motions for reconsideration are disfavored, however, and are not the place for parties to make new arguments not raised in their original briefs. Northwest Acceptance Corp. v. Lynnwood Equip., Inc., 841 F.2d 918, 925–26 (9th Cir. 1988). Nor is reconsideration to be used to ask the court to rethink what it has already considered. United States v. Rezzonico, 32 F. Supp. 2d 1112, 1116 (D. Ariz. 1998). "A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." U.S. v. Westlands Water Dist., 134 F. Supp. 2d 1111, 1131 (E.D. Cal. 2001).

Motions to reconsider are committed to the discretion of the trial court. Combs v. Nick Garin Trucking, 825 F.2d 437, 441 (D.C. Cir. 1987); Rodgers v. Watt, 722 F.2d 456, 460 (9th Cir. 1983). To succeed, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. See Kern-Tulare Water Dist. v. City of Bakersfield, 634 F. Supp. 656, 665 (E.D. Cal. 1986), affirmed in part and reversed in part on other grounds 828 F.2d 514 (9th Cir. 1987). "[R]econsideration is appropriate 'if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) there is an intervening change in controlling law.'" County of Santa Clara v. Trump, 267 F.Supp.3d 1201, 1207-08 (N.D. Cal. 2017), quoting Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993). Local Rule 230(j) requires a party to show the "new or different facts or circumstances claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion."

The court will grant in part plaintiff's motion for reconsideration, having erred in not adequately considering the limited scope of the nine responsive RVRs identified in plaintiff's reply brief when ruling on the motion to compel. As with the requested grievances and appeals, the identified RVRs may "relate to other incidents of retaliation." ECF No. 89 at 9-10 ("Courts generally order production of complaints that involve allegations of similar incidents or

allegations of dishonesty" (quoting Whitely v. CDCR, No. 2:18-cv-01103-RGK-AGR, 2021 WL 840067, at *2 (C.D. Cal. Jan. 29, 2021))). The court grants reconsideration only as to requests number 7 and 11, which are now "limited to 9 RVRs." (ECF No. 91 at 3.) As with the grievance files, the nine RVRs may be redacted as necessary to protect the privacy interests of inmates and other third-parties. Production shall occur within the next thirty days.

**PLAINTIFF'S REQUEST TO MODIFY THE DISCOVERY AND SCHEDULING ORDER**

Also before the court is plaintiff's motion to modify the discovery and scheduling order. (ECF No. 94.) Plaintiff seeks to extend the current deadline to conduct the depositions of all seven defendants 60 days to April 9, 2025, to allow time to review the grievances and appeals and resolve video access issues (discussed in plaintiff's contempt motion, *infra*). (Id.) Counsel for defendants does not oppose the extension. (Declaration of Marti ¶ 6, ECF No. 94-1 at 2.)

Good cause shown, the court grants plaintiff's request to modify the discovery and scheduling order. Given the time required to conduct the in camera review of the grievances and address plaintiff's various discovery motions, the court will extend the deadline to conduct depositions to May 8, 2025, and the deadline for the filing of dispositive motions will be extended to August 8, 2025.

**PLAINTIFF'S MOTION TO HOLD DEFENDANTS IN CONTEMPT**

**I.    Background**

Plaintiff seeks to hold defendants in contempt and impose sanctions for failure to comply with the court's order (ECF No. 89) compelling production of RFP 1, number 8, comprising fifteen video files. (ECF No. 95.) In the court's order, the undersigned granted plaintiff's motion to compel (ECF No. 41) and ordered defendants to provide plaintiff with a "reasonably usable" copy of the video footage. (ECF No. 89 at 15.) Plaintiff now claims that defendants insist on the same arrangement that precipitated his motion to compel, i.e., defense counsel playing and controlling the video from their location through video conferencing with plaintiff. (ECF No. 95 at 2-3.) He cites past instances where he and other inmates were allowed to watch videos without defense counsel present and permitted to stop and start the footage on their own. (Id. at 3-4.)

////

Defendants oppose the motion. They argue that they have complied with the court's order to provide plaintiff opportunities to meaningfully review the footage, because "there is no meaningful difference between a remote and in-person viewing." (ECF No. 4.) They further argue that in-person viewings are burdensome on the prison and that courts generally only order a single in-person viewing. (Id. at 4-5.) Finally, defendants argue that inmates are prohibited from possessing electronic media and that they will lodge the footage on plaintiff's behalf when needed. (Id. at 3-6.) On reply, plaintiff argues that a meaningful opportunity to review would be "without defense attorneys present or operating the equipment." (ECF No. 97.) He again references other cases and situations where prison staff have accommodated his and other inmates' in-person viewings. (Id. at 4-7.)

**II.    Analysis**

Plaintiff's motion is pursuant to Federal Rule of Civil Procedure 37(b)(2), which grants courts the authority to hold parties in contempt for failure to obey court orders. Fed. R. Civ. P. 37(b)(2)(A)(vii); see also Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1479-80 (9th Cir. 1992) (affirming district court's sanction order against corporation for failure to comply with discovery orders). To support a judgment of contempt, the district court must find, based on clear and convincing evidence, that: (1) the party violated the order; (2) the violation did not constitute "substantial compliance" with the order; and (3) the violation was not based on a good faith and reasonable interpretation of the order. In re Dual-Deck Video Cassette Recorder Antitrust Litigation, 10 F.3d 693, 695 (9th Cir. 1993).

The court declines to hold defendants in contempt or issue sanctions for failure to comply with the court's order (ECF No. 89). Even if the court were to determine that defendants violated that order, the parties' briefing plainly reveals that the violation would hinge on a good faith, reasonable interpretation of the court's directive to provide plaintiff with a "reasonably usable" copy of the video footage. Therefore, plaintiff's motion to hold defendants in contempt is denied.

While the court declines to hold defendants in contempt or issue sanctions, it will exercise its authority to resolve the parties' disagreement over the order. See Fed. R. Civ. P. 37(b)(2)(A) (court may issue "further just orders" to enforce discovery order); see also Brady v. Brown, 60

1   F.3d 832 (9th Cir. 1995) ("there is no question that courts have inherent power to enforce
2   compliance with their lawful orders") (internal quotations and citation omitted).  The court is
3   convinced, based on the numerous discovery motions filed in this matter already and the parties
4   unsuccessful meet and confer sessions, that waiting to address the parties' dispute over video
5   access would needlessly prolong the proceedings.
6       In its order, the undersigned stated that "[r]easonably usable means, in this context, that
7   plaintiff must be afforded both a meaningful opportunity to review the videos and a means of
8   filing the footage with the court if he intends to rely on it in subsequent proceedings.  (ECF No.
9   89. 15 (citing Foster v. Russell, 2021 WL 6500721, at *2 n.1 (E.D. Cal. Dec 20, 2021)).)  The
10  parties offer vastly different interpretations of this definition.  The disagreement appears to hinge
11  on three main issues: (1) the method of viewing; (2) the frequency of viewing; and (3) possession.

           **A.  Method of Viewing**

13      First, regarding the method of viewing, plaintiff objects to videoconferencing because
14  defendants' counsel controls the session and plaintiff cannot play, stop, or pause the video.  (ECF
15  No. 97 at 13.)  He further claims that that viewing the videos in the presence of defense counsel
16  will expose his legal strategy and violate his work product.  (Id. at 14.)
17      Defendants claim that "there is no meaningful difference between a remote and in-person
18  viewing."  (ECF No. 96 at 4.)  For support, defendants cite anecdotal evidence of inmates
19  viewing videos remotely without objection (Declaration of Gray Gilmore ¶ 10, ECF No. 96-1 at
20  3) and several cases, all of which are distinguishable.  Defendants cite Martin v. Chavez, No.
21  1:11-CV-01461-AWI, 2014 WL 3385170, at *2 (E.D. Cal. July 10, 2014), where the court
22  ordered OAG to make a video available to plaintiff, a former inmate, at its Sacramento office.
23  While the in-person viewing occurred at defense counsel's office, the case does not reveal
24  whether defense counsel was present or controlled the video.  Further, defendants cite Carter v.
25  Mandy, No. 21-11568, 2022 WL 16796626, at *2 (E.D. Mich. Nov. 8, 2022), where the court
26  ordered defendants to make video available to a prisoner-plaintiff for a one-time viewing or to
27  provide "still-shot photographs captured from the video recording."  It appears defendants are
28  claiming video conferencing goes above and beyond still photographs.  But the court in Carter

found the still-shot photographs appropriate because the videos had no audio. Id.

In short, defendants have failed to show how defense counsel's presence and control over footage via video conferencing allows plaintiff meaningful opportunity to review the video. The court will order defense counsel to coordinate with the MCSP Litigation Coordinator to arrange for plaintiff to view the video in-person consistent with further instructions below. While the court appreciates the security, technological, and scheduling barriers to arranging this inspection (see ECF No. 96 at 6-7), "[p]rison litigation coordinators have proven effective at facilitating similar requests." Foster, 2021 WL 6500721, at *2 n.1 (collecting cases).

### B. Frequency of Viewing

Defendants cite numerous cases where the courts granted motions to compel video footage but ordered only a single viewing. (See ECF No. 96 at 4-5.) Plaintiff for his part suggests that a single viewing lasting two to three hours, "with a possible second opportunity to review the video evidence prior to the depositions," would constitute a meaningful opportunity. (See ECF No. 97.) The court agrees that a single viewing appears to be standard practice. Further, a single viewing will help mitigate the scheduling and other burdens defendants identify in their opposition. Therefore, the court will order a single in-person viewing of the footage lasting no more than three hours.

### C. Possession

Finally, defendants object to producing physical copies of the video on CDs, DVDs, USB drives, or other electronic media. Yet defendants claim this is all that plaintiff will accept: "In Plaintiff's mind, production means providing a physical copy to the prison so that he may request viewings at his leisure and as many times as he wants." (ECF No. 96 at 5.) Plaintiff, however, appears to deny wanting physical copies. (See ECF No. 41 at 3 ("Apparently, Ms. Santos confuses plaintiff's intention of just viewing the video evidence with possession").) Regardless, the court agrees that possession is not necessary to provide plaintiff meaningful opportunity to review the video. As plaintiff won't have possession, defendants offer to lodge the footage on his behalf with the court when needed (ECF No. 96 at 3) is also appropriate.

////

     Accordingly, the court orders defense counsel to coordinate with the MCSP Litigation Coordinator to arrange for plaintiff to view the videos in-person within 30 days of this order. Plaintiff shall cooperate with these efforts. The in-person viewing shall occur in a single session lasting no more than three hours. Plaintiff shall not be given possession of the fifteen videos and is directed to contact defense counsel regarding any requests to lodge the videos with the court.

## CONCLUSION

     This is the second comprehensive order the court has issued in recent months resolving plaintiff's myriad discovery motions. Such orders are extremely resource-intensive at a time the court is dealing with heavy caseloads. The court advises plaintiff, as well as defendant, to consider the **"Informal Discovery Resolution"** process detailed in pages 3-4 of the undersigned's civil standing order if further discovery disputes arise.[2] Through this process, the undersigned will seek to resolve discovery disputes outside the formal Local Rule 251 procedures by conducting an informal telephonic conference with the parties.

     Accordingly, IT IS HEREBY ORDERED that:

1. Following in camera review of grievances and appeals responsive to plaintiff's RFPs, Set 1, numbers 1 and 2, and Set 2, numbers 1 and 2, the court finds that:

    a. Defendants may withhold the following seven grievances: (1) 231290; (2) 233850; (3) 239923; (4) 241813; (5) 242824; (6) 244601; and (7) 248112.

    b. Defendants must produce the following fifteen grievances/appeals within 30 days of this Order: (1) 19-00713; (2) 18-04568; (3) 139696; (4) 19-04688; (5) 246627; (6) 262149; (7) 8-02819; (8) 18-05051; (9) 18-05095; (10) 13-1824; (11) 339799; (12) 17-01598; (13) 20039945; (14) 20045502; (15) 381973. The files may be redacted as necessary to protect the privacy interests of inmates and other third-parties.

---

[2] The court's civil standing order is available at: https://www.caed.uscourts.gov/caednew/assets/File/MASTER_2024_08_11%20SCR%20Civil%20Standing%20Order%20(DOF%20edits)%20scr%20V2.pdf.

      c. Plaintiff's receipt and use of the grievances/appeals is subject to the Protective Order entered below.

2. Plaintiff's motion for reconsideration (ECF No. 91) is granted in part, as follows:

      a. Defendants must produce the nine response RVRs within 30 days of this Order. The files may be redacted as necessary to protect the privacy interests of inmates and other third-parties.

      b. Plaintiff's receipt and use of the RVRs is subject to the Protective Order entered below.

3. Plaintiff's request to modify the discovery and scheduling order (ECF No. 94) is granted. The court will extend the deadline to conduct depositions to May 8, 2025, and the deadline for the filing of dispositive motions will be extended to August 8, 2025.

4. Plaintiff's motion to hold defendants in contempt for failure to comply with a court order (ECF No. 95) is denied.

5. The court orders defense counsel to coordinate with the MCSP Litigation Coordinator to arrange for plaintiff's in-person review of the fifteen videos responsive to RFP Set 1, number 8, within 30 days of this order. The in-person viewing shall occur in a single session lasting no more than three hours. Plaintiff shall not be given possession of the fifteen videos and is directed to contact defense counsel regarding any requests to lodge the videos with the court.

6. The Clerk of the Court is directed to serve a copy of the court's civil standing order on plaintiff.

**PROTECTIVE ORDER**

The Court expressly limits plaintiff Alex Lamota Marti's use of the redacted grievances/appeals and RVRs to be disclosed by defendants (the "Protected Documents") to the following purpose: pursuit of his claims in this lawsuit. Plaintiff is prohibited from showing or otherwise disclosing any of the Protected Documents to any other incarcerated person or from filing any of the Protected Documents in a different lawsuit without a further prior order from this Court allowing such filing. Violation of this Protective Order by plaintiff may subject him to

////

sanctions, including a recommendation that this lawsuit be dismissed. However, this Protective Order does not prevent plaintiff from filing any of the Protected Documents in this lawsuit.

DATED: March 4, 2025

_____
SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE